DECISION AND JUDGMENT ENTRY
{¶ 1} Terry L. Koueviakoe appeals the Gallia County Court of Common Pleas' entry that overruled his motion to suppress. Koueviakoe argues that the trial court erred when it overruled his motion to suppress the cocaine and crack cocaine obtained from a search of his person and vehicle. He claims that the officer did not have reasonable suspicion of other criminal activity to detain him at the scene of the traffic stop until a drug-sniffing dog could arrive. We agree because, after applying the law involving reasonable suspicion to the trial court's findings of fact, we find after viewing the totality of the circumstances that the trooper lacked reasonable suspicion to continue the stop to investigate other criminal activity. We further find that the trial court resolves credibility issues and on remand must decide if the information given by the confidential informant was credible or not credible. Accordingly, we reverse the judgment of the trial court and remand this cause for further proceedings consistent with this opinion.
 I {¶ 2} A Gallipolis police detective received information from a confidential informant that Koueviakoe and Beverly Hisle were transporting cocaine into Gallia County. The detective passed this information, along with a description of the vehicle, to Trooper Robert J. Jacks of the Ohio State Highway Patrol.
 {¶ 3} Trooper Jacks testified that he located the vehicle driven by Koueviakoe as it entered Gallia County on State Route 35. Hisle was a front seat passenger. The trooper observed the vehicle cross the middle line on three separate occasions. The vehicle, an Oldsmobile minivan, had license plates that came back to a 1991 Pontiac. Because of the marked lane violations and further because the license plate did not match the minivan, he stopped the vehicle. Other officers arrived as well.
 {¶ 4} Trooper Jacks approached the vehicle on the driver side and talked to Koueviakoe. A deputy sheriff went to the passenger side. Trooper Jacks noticed a strong odor of an air freshener coming from inside the vehicle and that Koueviakoe and Hisle were very nervous. He learned that Hisle had just purchased the vehicle that day and that Koueviakoe had a valid driver's license.
 {¶ 5} Trooper Jacks advised Koueviakoe that he would give him a warning for a marked lane violation and a ticket for a seat belt violation. He then talked to Koueviakoe and Hisle separately. They said that they were dating each other and going to Gallipolis. However, one said that they were going to see Hisle's mother and the other said Hisle's friend. One said that they would leave on Saturday to return to Columbus and the other said that they would leave on Sunday. In addition, Hisle did not know how to pronounce her boyfriend's last name, i.e. "Koueviakoe."
 {¶ 6} Instead of allowing Koueviakoe and Hisle to leave, Trooper Jacks began talking to Hisle while waiting for the drug-sniffing dog's arrival. Trooper Jacks testified that he kept them at the scene 10 to 20 minutes before the drug-sniffing dog came. The dog raised its paw or paws and scratched a couple of times, which is an indicator that narcotics were in the vehicle.
 {¶ 7} The officers searched the vehicle, Koueviakoe and Hisle. They found the cocaine and crack cocaine, which resulted in charges of (1) possession of cocaine and (2) possession of crack cocaine against Koueviakoe. Koueviakoe entered not guilty pleas to the two felony offenses and filed a motion to suppress the cocaine and crack cocaine obtained from the search.
 {¶ 8} The trial court found that the confidential informant was not pivotal to this case because of other indicators leading to probable cause. Specifically, the trial court found that the officers had probable cause to search because of "[1] the nervousness of the occupants of the vehicle, [2] the registration of the license plates to another vehicle, [3] the discrepancies in the stories told by the occupants, [4] the strong odor of an air fragrance and [5] the `hit' by the drug dog." The trial court did not state at what point during the traffic stop that the trooper had reasonable suspicion of other criminal activity. Moreover, the court did not indicate which of the above five factual findings were necessary before the trooper had reasonable suspicion of other criminal activity.
 {¶ 9} After Koueviakoe entered a no contest plea, the trial court found him guilty of both felony drug offenses and sentenced him accordingly.
 {¶ 10} Koueviakoe appeals, asserting the following assignment of error: "The trial court committed reversible error when it failed to grant defendant/appellant Terry Koueviakoe's motion to suppress the drugs that were confiscated during the traffic stop on November 15, 2002, in Gallia County, Ohio."
 II {¶ 11} Koueviakoe argues that the trooper did not have reasonable suspicion of other criminal activity so that he could detain him until the drug-sniffing dog arrived. The state argues that the trooper had reasonable suspicion to search from the moment he stopped the vehicle. Even though the trial court did not make a factual finding that the "knowledge from the confidential informant" was one of the factors that the trooper could consider for probable cause to search, the state in its argument included it as one of the factors leading to reasonable suspicion of other criminal activity. The state in its argument does not address or dispute that the trooper detained Koueviakoe while waiting on the drug-sniffing dog to arrive.
 {¶ 12} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution give "[t]he right of the people to be secure * * * against unreasonable searches and seizures[.]" A search or seizure conducted without a prior finding of probable cause by a judge or magistrate is per se unreasonable, pursuant to the Fourth Amendment, subject to a few specific and well-delineated exceptions. California v.Acevedo (1991), 500 U.S. 565; State v. Kessler (1978),53 Ohio St.2d 204, 207. The prosecution has the burden of establishing the application of one of the exceptions to this rule designating warrantless searches as per se unreasonable. Id., citations omitted. One exception to the rule is that police officers may search an automobile without a warrant when they have probable cause that it contains contraband Carrol v. United States
(1925), 267 U.S. 132. A court must exclude any evidence obtained in violation of that person's Fourth Amendment rights. Mapp v.Ohio (1961), 367 U.S. 643, 655. The purpose of this exclusionary rule is to remove any incentive to violate the Fourth Amendment and, thereby, deter police from unlawful conduct. State v.Jones (2000), 88 Ohio St.3d 430, 435.
 {¶ 13} Our review of a decision on a motion to suppress presents mixed questions of law and fact. State v. Hatfield
(Mar. 11, 1999), Ross App. No. 98CA2426, citing State v.McNamara (Dec. 23, 1997), Athens App. No. 97 CA 16, citingUnited States v. Martinez (C.A. 11, 1992), 949 F.2d 1117, 1119. At a suppression hearing, the trial court is in the best position to evaluate witness credibility. State v. Dunlap (1995),73 Ohio St.3d 308, 314. Accordingly, we must uphold the trial court's findings of fact if the record supports them by competent, credible evidence. Id. We then conduct a de novo review of the trial court's application of the law to the facts.State v. Anderson (1995), 100 Ohio App.3d 688, 691.
 {¶ 14} Here, Koueviakoe does not contest that competent, credible evidence supports the factors found by the trial court to show probable cause for the search, i.e. "[1] the nervousness of the occupants of the vehicle, [2] the registration of the license plates to another vehicle, [3] the discrepancies in the stories told by the occupants, [4] the strong odor of an air fragrance and [5] the `hit' by the drug dog." Therefore, the issue is whether the trial court's first four factual findings are enough to establish reasonable suspicion of other criminal activity so that the trooper could detain Koueviakoe until the drug-sniffing dog arrived.
 {¶ 15} The United States Supreme Court has identified three categories of police-citizen contact: the consensual encounter, the investigatory detention and a custodial arrest. See Floridav. Royer (1982), 460 U.S. 491, 501-507; United States v.Mendenhall (1980), 446 U.S. 544, 553. The investigatory detention is relevant here.
 {¶ 16} An investigative detention, or "Terry stop," constitutes a seizure that implicates the Fourth Amendment.State v. Taylor (1995), 106 Ohio App.3d 741, 751. A "seizure" occurs under the Fourth Amendment only when, in view of all the circumstances surrounding the incident, the police officer restrains the person's liberty, either by physical force or by show of authority, such that a reasonable person would not feel free to decline the officer's request and walk away. State v.Williams (1990), 51 Ohio St.3d 58, 61.
 {¶ 17} When a seizure occurs, the officer must have a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent. Terry v.Ohio (1968), 392 U.S. 1, 21; see, also, State v. Chatton
(1984), 11 Ohio St.3d 59, 61. "The investigative detention is limited in duration and purpose and can only last as long as it takes a police officer to confirm or dispel his suspicions."Taylor, supra, at 748. See State v. Robinette (1997),80 Ohio St.3d 234, paragraph one of the syllabus. "The lawfulness of the initial stop will not support a `fishing expedition' for evidence of crime." State v. Gonyou (1995), 108 Ohio App.3d 369, 372, quoting State v. Smotherman (July 29, 1994), Wood App. No. 93WD082, citing State v. Bevan (1992), 80 Ohio App.3d 126, 130.
 {¶ 18} We determine reasonable suspicion by considering the totality of the circumstances. State v. Bobo (1988),37 Ohio St.3d 177, paragraph one and two of the syllabus; State v.Ramos, 155 Ohio App.3d 396, 2003-Ohio-6535; State v. Heard,
Montgomery App. No. 19323, 2003-Ohio-1047. We evaluate those circumstances "through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold." State v. Andrews (1991), 57 Ohio St.3d 86, 87-88.
 {¶ 19} Here, Trooper Jacks testified that he relied on five indicators to support probable cause, i.e. (1) the knowledge received from the confidential informant, i.e. Koueviakoe and Hisle were transporting cocaine into Gallia County, (2) a strong odor of air freshener, (3) the differences in their stories, (4) Hisle could not pronounce Koueviakoe even though she said that they had been dating for a couple of months (the trial court apparently could not pronounce it either because he asked for permission at the beginning of the hearing to call him "Mr. K" and did not include this problem as an indicator for probable cause) and (5) the dog alerted. These five indicators are different than the trial court's factual findings leading to probable cause.
 {¶ 20} As we stated earlier, the state does not address or dispute Koueviakoe's claim that the trooper detained Koueviakoe longer than reasonably necessary to write a warning for the marked lane violation and a ticket for the seatbelt violation. For the reasons that follow, we find that the first four factual findings of the trial court did not give the trooper reasonable suspicion to detain Koueviakoe until the drug-sniffing dog arrived.
 {¶ 21} Trooper Jacks testified that Koueviakoe and Hisle were very nervous. The trial court made this indicator its first factual finding to support probable cause. However, despite the trial court's factual finding, the trooper did not include nervousness as one of the indicators he relied on for probable cause for the search when he testified on cross-examination at the motion to suppress hearing.
 {¶ 22} The second factual finding by the trial court as an indicator of probable cause was "the registration of the license plates to another vehicle[.]" Trooper Jacks quickly investigated this problem and was satisfied when he discovered that Hisle had just bought the vehicle that day. He did not cite anyone for fictitious tags and did not include this problem in his testimony as one of his indicators that he relied on for probable cause for the search. Instead, it was one of the two reasons that he initially stopped the vehicle.
 {¶ 23} The third factual finding by the trial court as an indicator of probable cause for the search was "the discrepancies in the stories told by the occupants[.]" Trooper Jacks did testify that the "differences in their stories" was one of the reasons that he used to support probable cause. The main difference in their stories was that one said that they were going to Hisle's mother's house and the other said that they were going to Hisle's friend's house. This is a minor discrepancy (especially if Hisle considers her mother her friend). The other difference in their stories is that one said that they were going to go back to Columbus on Saturday and the other said Sunday. Again, we consider this difference minor.
 {¶ 24} The fourth factual finding by the trial court as an indicator of probable cause for the search was "the strong odor of an air fragrance[.]" This is an indicator because one of its uses is to mask the odor of drugs.
 {¶ 25} However, although these four factual findings by the trial court could lead Trooper Jacks to suspect that something was amiss, we find that these indicators are not specific and articulable facts that support a reasonable suspicion that Koueviakoe's vehicle contained drugs. Hence, Trooper Jacks did not have a legal basis to detain Koueviakoe until a drug-sniffing dog could arrive and confirm or dispel his suspicions. See, e.g.,Ramos, supra; State v. Byczkowski (Nov. 16, 2001), Greene App. No. 2002CA31, 2001 WL 1468903. Consequently, after reviewing the totality of the circumstances, we find that the four factual findings by the trial court do not support a conclusion that the trooper had reasonable suspicion of criminal activity so that he could detain Koueviakoe until the drug-sniffing dog arrived. Therefore, the trial court erred when it did not suppress the cocaine and crack cocaine that was found in the vehicle and on Koueviakoe.
 {¶ 26} We must now decide if we can consider whether the confidential informant gave credible information that the officer could consider as a factor leading to reasonable suspicion of other criminal activity. The most hotly disputed fact in the trial court was whether this information was credible. Yet, the trial court concluded that it did not have to consider this evidence or resolve this dispute.
 {¶ 27} At a suppression hearing, the trial court is in the best position to evaluate witness credibility. Dunlap, supra, at 314. We then uphold the trial court's findings of fact if the record supports them by competent, credible evidence. Id. However, a reviewing court cannot consider evidence that was not considered by the trial court because it would exceed its role and in effect become a trial court. See, e.g., Murphy v.Reynoldsburg (1992), 65 Ohio St.3d 356, 360; State v. Cookson
(Sept. 25, 2001), Washington App. No. 00CA53, at 4, 2001-Ohio-2587. Hence, we cannot consider whether the information given by the confidential informant is credible or not credible because we would exceed our role. Consequently, on remand, the trial court must resolve this credibility dispute.
 {¶ 28} Because we find that the trooper detained Koueviakoe for an unreasonable length of time when we consider the trial court's first four factual findings, we need not address his remaining arguments under his assignment of error. Accordingly, we sustain Koueviakoe's assignment of error, reverse the judgment of the trial court and remand this cause to the trial court for further proceedings consistent with this opinion.
Judgment reversed and cause remanded.
Harsha, J.: Concurs with Concurring Opinion.
Abele, J.: Dissents with Dissenting Opinion.